Morton B. Silberman, J.
This is a CPLR article 78 proceeding to review a determination made by respondents concerning the amount of petitioner’s public assistance grant. Said determination was made after a "fair hearing.”
Petitioner and her seven-year-old daughter are recipients of public assistance in the form of "Aid to Families with Dependent Children” (hereinafter "AFDC”). In December, 1974 petitioner and her daughter commenced sharing an apartment with petitioner’s sister and her child. Petitioner’s sister is also an AFDC recipient. Based upon the foregoing circumstance, the "basic maintenance” portion of petitioner’s AFDC grant was reduced from $150 a month (which is the basic maintenance allowance for a household consisting of two persons) to $129 a month (which is one half of the basic maintenance allowance for a household consisting of four persons).[1]
Respondents predicated such reduction upon section 352.32 of the Regulations of the Department of Social Services (18 NYCRR 352.32) which, insofar as relevant hereto, provides as follows:
"(e) In cooperative cases, i.e., two or more categories of public assistance in the household, the following procedures shall be applied:
"(1) Allowances for items of need shared by the family, such as the basic monthly allowance and shelter, shall be prorated”.
Petitioner argues that the foregoing regulation is inapplicable to her case, because it authorizes proration or co-operative budgeting only when there are "two or more categories of *212 public assistance in the household” (18 NYCRR 352.32 [e] [1]); whereas, petitioner and her sister were in one and the same category of public assistance (i.e., AFDC).
The court does not agree with petitioner’s narrow construction of the regulation. In effect, petitioner would construe the regulation as though it stated that proration is authorized when "two or more different categories of public assistance” exist in the household. The regulation, of course, does not contain the word "different.” In order to fairly construe the terms "two or more categories,” as used in the regulation, one must also look to the broader language of section 352.30(a) of the Regulations (18 NYCRR 352.30 [a]), which states as follows: "(a) For budgetary purposes the agency shall include in its estimate of need and application of income all persons applying for or receiving public assistance and care and living as a unit within the same household.”[2] In the court’s opinion, when read together, sections 352.32 (e) (1) and 352.30 (a) clearly evince an intent to permit proration or co-operative budgeting in all instances where two or more recipients of public assistance elect to reside together in a single household.
Petitioner’s arguments concerning the constitutionality of the foregoing regulations, as so construed, are lacking in merit (see Matter of Padilla v Wyman, 34 NY2d 36). As the Court of Appeals there stated (p 40): "The rationale behind the reduction in amount of grants to recipients in a multiperson household is not obscure. The amount of a grant is directly related to the measure of a recipient’s needs. In a multiperson household the per capita cost of many items, since they are shared, will be less. This consequence involves no attribution of the contribution by any one member of the household to the maintenance of any other member. Each contributes his own share to the reduced pooled costs. Nor is any reduction in the standard of living implied.”
Another issue raised at the fair hearing, and in this proceeding, concerns the propriety of the further temporary reduction of petitioner’s AFDC grant for the purpose of securing repayment, in installments over a six-month period, of the sum of $63.39. That sum had been paid by the Rockland County Department of Social Services (hereinafter "local agency”) to Orange and Rockland Utilities, Inc., in order to *213 avoid a termination of utility services at petitioner’s former residence for nonpayment of past due bills. The New York State Department of Social Services (hereinafter "State agency”) upheld the propriety of such reduction, it having concluded that the local agency had "acted properly” under the regulations (18 NYCRR 352.7 [g] [5]). That regulation provides:
"(g) Payment for services and supplies already received. Assistance grants shall be made to meet only current needs. Under the following specified circumstances payment for services or supplies already received is deemed a current need: * * *
"(5) For a recipient of public assistance, an advance allowance may be provided to pay for utilities already furnished * * * and for which a grant has been previously issued, to prevent a shut-off or to restore services. Such an allowance shall not exceed the cost of such utilities for the four-month period immediately preceding the advance payment, and may be provided only where the recipient has made a request in writing for such an allowance, and has also requested in writing that his grant be reduced in equal amounts over the next six months to repay the amount of advance allowance. ” (Emphasis added.)
The State agency’s conclusion that the foregoing regulation was complied with herein is without evidentiary support in the record. No competent proof was offered at the fair hearing to establish that petitioner had executed the requisite written request for advance payment, etc. Nor have respondents cured that deficiency by offering proof thereof in this proceeding. Thus, petitioner’s allegation that she never executed such a written request stands uncontradicted. It follows that the aforesaid reduction was unauthorized and that the sums withheld from petitioner’s AFDC grant on account thereof must be restored to petitioner.
The last issue raised by petitioner in this proceeding involves certain payments of $30 a week which petitioner received for some 13 weeks during the months of April through July, 1974 under the Comprehensive Employment and Training Act of 1973 (87 US Stat 839, hereinafter "CETA”). It is undisputed that CETA payments must be "disregarded in determining the amount of public assistance payments under Federal or Federally assisted public assistance programs” (US Code, tit 29, § 821, subd [a]).
*214 Petitioner alleges that, in violation of the foregoing statute, the local agency improperly considered her CETA payments as income to her and improperly reduced her grant accordingly. Petitioner further alleges that on December 18, 1974 her attorney requested the local agency to reimburse her (pursuant to 18 NYCRR 352.31 [e]) to correct the underpayments resulting from the improper budgeting of her CETA payments as income, but that such reimbursement has not yet been made.
The answer to the petition submitted on behalf of the local agency admits all of petitioner’s allegations concerning the aforesaid CETA payments. However, in the answer submitted on behalf of the State agency, it is alleged that "petitioner did not make prior objection to the application of the CETA income to Rockland County Social Services nor make any demand in her request for a fair hearing with respect thereto”; that "[t]he question of exemption of CETA income was not in issue at the Fair Hearing”; and that, therefore, "[ejxempt CETA income is not a question before this Court for consideration.”
The State agency’s allegation that petitioner made no complaint to the local agency is difficult to understand in view of the local agency’s admission to the contrary. As to the State agency’s further allegation that the CETA income question "was not in issue” at the fair hearing, the hearing minutes reflect the following colloquy between petitioner’s attorney, Mr. Good, and the hearing officer:
"the hearing officer: Alright, you go ahead and make your statement.
"mr. good: The last issue, apparently concerns a training allowance under the Comprehensive Employment Act. Which the appellant received during a period of about 13 weeks, this past summer. At the rate of $30.00 a week * * * This money is exempt and cannot be counted as income. Yet, it was discovered by myself when I was reviewing the files to prepare for this hearing, in fact some of that money had been applied by the [local] agency in their calculations of [petitioner’s] grant. I have made a request on [petitioner’s] behalf, to the [local] agency, that that money be restored as of this date. The money has not been restored, to my knowledge.
"the hearing officer: Okay. You want to speak, Mr. Frank?”
In response, the local agency’s investigator, Mr. Frank, pro *215 ceeded to ask petitioner questions unrelated to the CETA issue. The fair hearing decision herein makes no reference whatsoever to the CETA issue, which, as the hearing minutes clearly show, was squarely tendered to the hearing officer.
Inasmuch as the issue was in fact raised upon the fair hearing, and since neither the hearing minutes nor the return submitted in this proceeding set forth any facts which would tend to justify deprivation herein of the clear exemption accorded to CETA income, respondents shall be directed to recompute petitioner’s grant accordingly.
The petition is granted to the extent that respondents are directed to correct forthwith the underpayments to petitioner occasioned by the unauthorized payment by the local agency to Orange and Rockland Utilities, Inc., and the improper budgeting of petitioner’s CETA payments as income (18 NYCRR 352.31 [e]). The petition is otherwise denied.

. Respondents similarly reduced petitioner’s monthly shelter allowance from $175 to $125. However, petitioner states that she does not contest such reduction, because the total rent for the apartment she shared with her sister was $250 a month.

. Of course, exceptions to the above regulation exist where by virtue of other regulations particular forms of public assistance grants are not to be considered "income” for budgetary purposes (see, e.g., Matter of Berliner v Lavine, 80 Misc 2d 1).